I'd like to say before we start, I attended Wake Forest Law School. I won't mention how many decades ago it was, but I'm delighted to see that they have a veterans clinic that's near to my heart. I'm familiar with their post-conviction innocence commission clinic, and that's a wonderful thing. I wish we had those back in my day. We're here on the Stitz case, Your Honor, and this is a case that comes to us from a guilty plea off of a plea agreement, and I recognize that there may be an issue in the first instance as to what is the appropriate standard of review. I argued in my brief that the appropriate standard will be that of abuse of discretion. The government sees it differently. It is my contention that regardless of the review standard applied, that Mr. Stitz is entitled to return it to the district court for further hearings on the evidence. At the center of this case is a computer phenomenon referred to as file sharing or peer-to-peer programs. Those allow people, as I understand it, to enter into these programs, download data, and there may be instances in which those who participate in these broad programs can access other people's data. And Mr. Stitz certainly understood how that worked as well, correct? He admitted that he understood that people could access the data that was on there. I have to candidly admit, based upon my review of the record, and I'm not making concessions for maybe post-conviction purposes later, but based upon this record, it's obvious... Okay, would you accept the fact that he admitted in the factual basis to his plea that he installed ARIES peer-to-peer file sharing software? I would certainly admit that. And used it to obtain underage pornography? I would admit that, Judge Duncan. And throughout this process... So what is the mens rea required for this? Well, I would maintain that the mens re... It's knowingly, correct? It's knowingly distributed. Now, the question for us, I think, is, and I could not find a direct published case in the Fourth Circuit, is the mere fact that a defendant enters into a peer-to-peer program, is that by itself enough to constitute the mens re? And you do understand that also in the factual basis for his plea, he acknowledged that in order to install this particular software, he was required to agree that any files he downloaded would be shared or could be shared. There is some record evidence that he had made that... No, no, this is the factual basis for his plea in which he acknowledged it. I will admit that, but I will also argue to the court that later at the factual basis slash sentencing hearing, there was some time taken up in district court where Mr. Sitz and his counsel suggested to Judge Conrad that Mr. Sitz had attempted to disable that particular feature of the file sharing program, which to me would suggest that Mr. Sitz did not intentionally, knowingly, or didn't want to... Well, intentionally and knowingly are two different things, right? And knowingly is not a specific intent crime, is it? Well, you're correct very narrowly. I'd say they're first cousins possibly, but they're certainly two different people in this family tree. I would suggest... And United States versus Matthews in the Fourth Circuit, you said you'd read no authority in the Fourth Circuit on SIENTA, but United States versus Matthews said the SIENTA requirement for this statute, Congress did choose knowingly, evidence is no intent to exempt innocent use of child pornography from prosecution. Right. Why isn't that applicable here? Because in Mr. Sitz's case, he did take steps to disable the file sharing peer-to-peer features of his program. Didn't he continue to download software after he was unsuccessful in disabling the peer-to-peer file sharing feature? We can see that he did continue to download programs. So he knew after his unsuccessful attempt to disable that feature that he was still downloading images that could be shared. He knew that he was downloading images for his personal perusal. But he had to know that they could be shared because he knew that was the feature of this particular software that he was unsuccessful in disabling. I can't quibble with your- You're saying essentially that there has to be, well, I'm not quite sure what you're saying. Are you saying that there has to be an affirmative desire to share? I would say there has to be an affirmative desire to share, which goes back to this issue of intent versus knowledge. I would also say in this particular case, on the facts of this case, where you have a defendant who says it's sentencing on a factual basis, I tried to disable this feature but was not successful because of the way the program is instituted. Do you have any authority for your position that there has to be some intent to share? I don't have any authority conclusively that I could find. My review produced a lot of cases that discuss the sentencing guidelines enhancement, and I would back up one step and try to argue your question, I think, in this fashion. If Congress had intended to criminalize peer-to-peer programs or file sharings, it could have. In this particular case, Congress said you have to knowingly distribute these items. In my case, Mr. Stitz, I would argue, was a passive distributor. I think that point was made on the record below by his counsel, probably at sentencing. So you have a passive distributor, for lack of a better phrase, who is not taking steps, from what I can tell in this record, to further barter, distribute, swap these programs. Is there an exception in the statute for passivity, passive distributor? There is not an exception in the statute for passivity or just sitting back on your heels and doing nothing. I will concede that. But I think that's because the statute requires that your distribution be knowing. And this is a very crude or rough analogy. I didn't make this point on brief. But for instance, in controlled substance cases, it's against the law under 21 U.S.C. 841, for instance, to possess controlled substances primarily with the intent to distribute. There are exceptions if you possess it for personal use. So the question by analogy may be this. If you access, attain child pornography or cocaine base for personal use, does that make you guilty of another crime, the conspiracy in the drug case, or in this case, guilty of knowing distribution of the images which you obtained? Except that in your hypothetical, there is no sort of external mechanism, as we have here, the file-to-file sharing mechanism by its very nature does the work of distribution. And then the question is whether or not your client understood that. And it seems clear that he understood that. In fact, he had a computer background which suggested that he was not a neophyte when it came to these things. He understood how these programs work. And that seems problematic for me. It is problematic. And there are cases that even back up your point on that, Judge, she asked. But in my case, he says, I tried to opt out or disable that. And in this record, I was not the counsel below, so I don't know what the discovery shows. I think it would have been instructive, for instance, for someone, his defense attorney or the prosecutor, to make part of the record these contracts of adhesion. But he did say he tried to disable it. But then he further said when he couldn't, he just kept using it. Kept using it because it got him what he wanted. It's a trading system. And he knows it. I would agree with you on that, Judge Thacker. That's a very accurate reading of the facts of this case. But again, come back to the ultimate colloquy, it's sentencing on a factual basis, where Mr. Sitz and his counsel essentially say, yes, I did it. I knew people could tap into my files. I didn't want them to do that. I didn't keep track of it. And I did everything that I could to preclude that. But that's not inconsistent with an intent to distribute on this record. I mean, he had some remorse for what he did, I suppose, and attempted to minimize the deleterious nature of his conduct. But the bottom line is that the files were, in fact, shared. And he understood that. He did understand that from the record. That's very true, Judge. Maybe the judge should have asked him, again, after he said, he did say, it was never my intent to distribute. But you have this stipulation of fact, which lays out how even with that assertion by the defendant, given the nature of the program and the way these things operated, and his futile intent to disable it, that on these facts, that that was enough. Well, let me see if I can take your point and try to do a pivot on that. Everything that you say is accurate and fair. And there was an acknowledgement at sentencing that he did try to disavow the use of these programs. And this is why I think, in the facts of this case, in the procedural posture of this case, it was error for Judge Conrad to have not explored this further or abated the hearing for further inquiry or further briefing. And that's why we maintain it was inappropriate for him to have accepted the facts, to establish the factual basis, and then issue the judgment. Did Mr. Stitz contest the factual basis? He didn't contest it in the sense of... Well, it kind of is a yes or no question. You have to either contest the factual basis so that the judge knows that there's a problem or not. Well, he obliquely distanced himself from the factual basis. Well, how would the district court know what to do with that? I don't really know except to argue that the factual basis document, which was filed with the plea agreement, is not a full recitation of all the facts. And once the pre-sentence report is issued and the sentencing memorandum issued... So when did he obliquely object to the factual basis? I believe that I cited that in my brief. Wasn't it in the context of the variance argument? It was, but it's... And by the time you get to the variance argument, I mean, that presupposes a factual basis has already been accepted and not objected to. It does, but it's still, in my mind, since the judge has the authority, in fact, the mandate, I guess, from Rule 32 to look at the four corners of the record below to make a decision as to whether there's a factual basis, I would suggest that at this late stage in sentencing, when this issue is presented, that perhaps Judge Conrad should have taken a time out and asked the parties to recalibrate their positions. Well, if you characterize it, excuse me, in that way, was it plainly wrong for him not to do it? Did he abuse his discretion in not doing it? Plainly wrong. Plainly erred. It would have to be plain error since it wasn't objected to. I would say that it was plain error because Rule 32, as I read it and understand it, doesn't really place upon the litigants, Mr. Stitt's primarily the duty to argue against the factual basis. The judge still has the mandate to make his or her own decision. Well, of course he does. You only get to the stage of the sentencing hearing where he was if you stipulate to the factual basis. Very true. That's why it's called a stipulation. Very true. Thank you, Your Honor. And you have some time for rebuttal. Thank you very much. Yes, ma'am. Thank you. May it please the Court, Amy Ray for the United States. Your Honor, under a plain error standard of review, an error is only plain if it is clear or obvious under the settled law of this Court or the Supreme Court. The very fact that the defendant suggests that this Court has not issued a published opinion and that we know the Supreme Court has not, that actually settles the matter right there. The District Court could not have plainly erred in accepting Mr. Stitt's guilty plea based on the factual basis to which he did stipulate, both in a written factual basis that provided detailed facts to support his guilty plea and at sentencing, I think that was page 39 of the Joint Appendix, he stipulated to the factual basis that there was a factual basis to support the offense. Now, the defendant argues that it's not enough that because he said, the defendant says in allocution, I didn't really mean to distribute this. I didn't want to do it. That is not the mens rea in the statute. It's quite plain in 2252A that it is knowingly. That's all that is required. And if this Court refers to the Supreme Court's decision in Voisin last term, the Supreme Court itself defines what knowingly means. It means that it is practically certain to occur. So we know that, that knowingly is it, what it means is practically certain as opposed to intentional, which means that he has to have the purpose of distribution. That is not what the statute requires. However, I also note that Mr. Stitz admitted in his allocution and in, if the Court refers to, I think it's page 141, the statement that he provided to the probation officer. He knew what this software did. He may not have liked it, but he did not discontinue use. He knows it, and he does not discontinue use. The FBI downloaded files from this gentleman's peer-to-peer collection, his software collection of child pornography, on three occasions between May and June of 2014. So we have three downloads. And during his allocution, Mr. Stitz acknowledges that he watched the computer as it downloaded, as someone downloaded one of his files. He says after that, he discontinued use. But, Ms. Ray, in Leighton, you had the situation in which the program, there had to be affirmative steps taken. And in that case, the defendant created a shared folder called MyMusic that allowed others to download his child pornography files, which implies some affirmative steps in route to distribution. This is a different situation. Here, there are no affirmative steps, correct? Ms. Ray, I don't think that the record reflects that there were no affirmative steps, Your Honor. There was a, and I will say this, because we're on plain air standard of review, because the factual basis wasn't contested. That was not developed. But this Court doesn't need it. In Leighton, what this Court actually held in that was the very use of the peer-to-peer software was enough to satisfy the distribution enhancement under the sentencing guidelines, which was enough under the sentencing guidelines. It didn't actually say that the defendant has to take those affirmative steps. Now, in the context of what qualifies as distribution, let's leave the Ms. Ray element to the side and talk about distribution. The Circuit Courts of Appeal, three of them, at least, really, their husband in the Third Circuit says there has to be not only the use of the peer-to-peer network, but there has to actually be evidence that someone did, in fact, download a file. The Tenth Circuit in Dunn and in Schaefer seems to suggest that that's not required. And in Dunn, the Tenth Circuit actually says, well, we're really not going to talk about it because we don't need to create a circuit split. In each of the cases where a court has addressed what distribution means, there has been evidence that, other than in the Third Circuit case, there's been evidence that there was a file downloaded. In this case, we have that evidence that a file was actually downloaded. In fact, the FBI did it three times and then we have the evidence that Mr. Stitz acknowledges. So this court does not need to reach the issue of whether or not mere use of peer-to-peer qualifies as distribution without evidence that a file was downloaded because we have evidence that the files were downloaded. Because that's also the First Circuit. Yes, it will. Or at least it makes reference to the fact that it makes files available to take and those files are, in fact, taken. Exactly. What I would say about that, Judge Duncan, both the First Circuit and the Ninth Circuit, they use that language, but in those cases, there were files. It's not exactly presented in those cases because files were actually downloaded. Having said that, I wouldn't take issue with the way that that was formulated because we don't need to take issue with that in this case. I'm not sure we would take issue with it anyway, but we don't need to because I think distribution fairly interpreted probably means it was, in fact, distributed. But we have that evidence. Someone has to be on the receiving end of the distribution for it to be... Sure. So let's say we had a case where peer-to-peer was used for one day or peer-to-peer was used for, you know, three days. And maybe it's a, as it was, I think it was in Johnson, maybe it's somebody who's on supervised release. So there's a probation officer that's regularly watching and they say, oh my land, this person is under supervised release. He's used peer-to-peer. It's been maybe three days. And maybe we don't know whether there was somebody who ever actually downloaded the file, whether it was, in fact, sent out. That's a much closer case. It's just not this one. And not only is it not this case, but we have the further layer of the standard of review and the fact that all Judge Conrad had to do was be subjectively satisfied that the facts would support the guilty plea. Well, of course, here you also have the fact that Mr. Stitz did have to check a box that recognized that the files were, in fact, available for download. That's right. He did. And it's not in the record, but I think he also had to have a share file of some sort. Now, whether or not he had to, you know, put what he had to put in it, again, it's not developed because it didn't need to be developed. And part of why it didn't need to be developed was because he did not object to it. But even if he had objected, I would respectfully suggest that his admissions, that he used the software and the evidence that the FBI agents downloaded child pornography files from that software. And actually, let me just look, because I believe there were the FBI agents on the factual basis, the defendant was sharing 149 files. So, there is actually something in the factual basis that suggests that it was in some way in a place in his computer where it could be shared, 149 files. So, and that's on page 16 of the Joint Appendix. So, anyway, I don't think that in this case, the issue of whether or not he put it in a shared folder or the affirmative steps that he would have taken was important because we know that he, in fact, distributed. And he admitted, in fact, supporting that. So, the District Court did not err, let alone plainly err, when it accepted his guilty plea. If your honors don't have any further questions, the United States requests that this court affirm the judgment of the District Court. Thank you. Thank you. Mr. Lee, you have some time for rebuttal. Thank you, Your Honor. In listening to the government's presentation, which was excellent, by the way. I'm sure she was. She appreciates that, Mr. Lee. It's a mutual admiration society. The bar takes care of itself. I digress. Judge Duncan, you made reference to this Leighton case. I was actually surprised you didn't leave with Leighton because in Leighton, we did not speak to the fact that Leighton, the government can't rely on Leighton entirely because Leighton did involve the affirmative steps that do not appear to be involved here. Well, and I think, maybe I didn't present it as well and brief as I would like to have, but I think when you look at the Leighton analysis, that's why Stitz's case should be reversed. Stitz, other than taking part in a file sharing program, did nothing himself to affirmatively distribute. Other than to acknowledge. He did affirm it. He did acknowledge that he knew the file-to-file sharing, that that was a function of the program. He did acknowledge that. But apart from that. He did, but I think a point could be made, whether it saves a day or not, but a point could be made that to take that, you're criminalizing the behavior of those other people who tap into Mr. Stitz's computer database. In other words. Well, I'm sure the FBI would be. Because they tap into it to get the 149 images and videos of child pornography that he made available for sharing. Well. It is criminal either way. I wouldn't read the statute quite that way. At least, I wouldn't concede the pointed argument, but I understand your point, Judge Sacker. I'm asking the court to consider. You're not conceding that participating in the. Well, I suppose it would not be for you to concede because you're not representing those people. I'm not representing those people. That's true. I'm coming to this without the benefit of discovery and other matters, but all I have. It's pretty hard when you stipulate a factual basis that has your client acknowledging. He acknowledges that people downloaded, tapped into his and maybe tap is the correct word that they access through the protocols of the file sharing program, probably through the contract of adhesion, which gave him this right to tap into his. Well, I'm not sure it's a contract. He didn't have to purchase this program. He didn't have to purchase it. That's very true. Very true. But he also took steps at some point to. Not enable. Access. Under these programs, access by other people, and that's why I think. The 4th Circuit should take this case as an opportunity to try to maybe clarify the jurisprudence and latent, you know, in many respects, these cases. In my mind, conflate the standards under the sentencing guideline enhancements versus the elements of the offense. And I'm all I'm arguing is to criminalize. Mr. Sitz to hold him criminally accountable under the statute should require more than just taking passive part in a file sharing program. Could I ask how you would write that? What is your what's the test you would have us adopt? What does it look like? You will not appreciate this sense of ledger domain, but I would suggest that the court vacated and send it back to the district court for amplification. I'm asking for this is apparently the relief that you are seeking, correct? But what do you what would you have the district court do? What what is the standard that you would have crafted as a result of this law that you wish for us to create? I would suggest that the opinion should say something along the lines of when Congress enacted this criminal statute, criminalizing distribution, Congress had more in mind than just taking passive part in a file sharing program. That's how I would put it. Thank you very much. We will come down and greet counsel. OK, and then we will take a short recess. But before we do that, Mr. Lee, I see that you are court appointed and we would very much like to thank you for the service that you have rendered to your client and to this court. Well, thank you. And I always it's an honor and a pleasure to be in the Fourth Circuit. I take my job seriously, as I commented earlier, post-conviction innocent projects are near and dear to my heart. Well, I'm sure your alma mater is very proud. Thank you.
judges: Allyson K. Duncan, Albert Diaz, Stephanie D. Thacker